is case number 22-30311, Kanai Ironclad v. CP Marine Services, and we'll hear from Alfred Ruffte. I'm sorry if I'm mispronouncing any names. You've got it exactly right, Your Honor. Okay, good. Good morning, Your Honors. Alfred Ruffte, may it please the Court, on behalf of the appellants, CP Marine and Ten Mile Exchange. We have a few issues to present today. The first, and I think most simple, I would propose to dispense with at first is the award in the Court below of prejudgment interest on punitive damages. For the, as noted in the cases cited in our briefs, it is impermissible for the District Court to have awarded prejudgment interest on punitive damages. There is authority in both the State and Federal Courts against it, which we have cited, conceptually as well. It doesn't really make sense because punitive damages are designed to punish and deter. They are not compensatory in nature. Mr. Ruffte, how do you respond to Mr. Bowman's argument that, in fact, this punitive damage award following the Illinois Central case is, in fact, at least in part compensatory? Your Honor, the answer to that is Illinois Central dealt with detention of vessels and demerit charges, which is a contractual matter. It was bound up in the merits of the case. And so, it was an award that was compensatory because it was allowable as a contract damage in the case. Yes, it has a punitive element to it, but that is far different from punitive damages per se that we are dealing with here. And Judge Brown, in the District Court opinion, made it clear that the $17,000 award was granted as punitive damages. But didn't she measure her punitive damages by the loss of the use of the vessel for five days because of your client's conduct? Didn't she measure it by that? She did. She did, Judge, yes. It suggests to me that perhaps there is a compensatory element to what she did in her punitive damage award. Well, it's interesting, Judge. What Judge Brown did here was she stated quite directly in the opinion that this is an award of punitive damages. And she found elsewhere in that same opinion that the plaintiff had not suffered any compensatory damages as a result of delay. So therefore, there was no basis for an award of compensatory damages for delay. You do agree your client converted the iron die? No, you don't agree to the facts of it, but assuming that Judge Brown is right on the facts and your client converted this barge for five days, correct? I'm sorry? Had the use of this barge deprived the plaintiff of his use of the barge for five days? I disagree with that. Well, I know you disagree with the facts, but if you assume that Judge Brown's facts are correct, then your client deprived Mr. Bowman's client of the use of that barge for five days, correct? The judge does make a finding to that effect, yes. And so even though they didn't—the plaintiff didn't prove the compensatory damages arising out of the breach of contract, the plaintiff was harmed because the plaintiff did not have use of the vessel for five—his vessel for five days, correct, or its vessel? I disagree with that. There's no evidence of any harm whatsoever to the plaintiff. The undisputed facts are the vessel left my client's shipyard and stayed—went to another shipyard nearby and stayed there for two months doing more work. In fact, it was an explicit finding of Judge Brown below that there was no monetary harm. There was no compensable harm or damage suffered from any delay at CP Marine Shipyard. In fact, the judge cites Kenai's witnesses, the plaintiff's witnesses, for the proposition that the plaintiff was still on schedule when the vessel left CP Marine Shipyard. That encompasses these— How did Judge Brown find this link with these five days to get to this punitive damage? As I think is fairly apparent in reading the words used by Judge Brown, what she has done is she's thought, okay, I want to—I cannot find any compensatory damages here. This is a case for deficient repairs and for delay causing a loss of charter hire on the back end in Alaska. I can't find any of those damages. They didn't happen. There's no breach of contract. According to the plaintiff's own witnesses, the vessel—the plaintiff's company was still on track to make it in time when it left CP Marine Shipyard, so no compensatory damages. However, I don't like this conduct, so I'm going to award a punitive damage. And how am I going to come up with something for a punitive damage? Well, I need something, so I'm going to—even though I can't award compensatory damages, I'm going to look to the delay as a basis for finding a punitive damage figure. I think that's what happened, but that does not mean that there was a compensatory element to that award. The judge is quite clear in stating that, quote, as a measure of punitive damages, close quote, I award the $17,000. Counsel, what typically should the court look at? I know you don't agree that punitive damages are even warranted in this case, but assuming the judge—we agree with the judge that there are adequate grounds for punitives, there's no abuse of discretion in wanting to award punitives. What is the more typical measure? What should the court have done, and what case law do you have to support another means of calculation? Judge Engler, I don't believe there's any standard for that. I think there is wide discretion on the part of the district court judge to do that as he or she wishes. I don't quibble with that. I simply make the point, which I believe is important, that these were strictly punitive damages. There was no compensatory element to them. Judge Brown found there was no basis for a compensatory damage award. Moving on to what I consider the more—even more important points in the case, my point—multiple point there is I believe this ruling must be disturbed because of this problem of the award of predetermined interest on punitive damages. So I think right there we establish that this ruling cannot stand in its current form. I think there are more important reasons for that, which I'd like to address next. Next, there are factual and legal problems with the award of punitive damages, as well as with the finding of wrongful detention of the vessel. Legally, with respect to punitive damages, in Exxon v. Baker, the Supreme Court established a general rule in maritime cases that— But it's not a hard and fast rule, is it, Mr. Rupte? It's not a hard and fast rule. There are other instances in which punitive damages can exceed one-to-one. Would you agree with that? I agree that Exxon—the language of Exxon v. Baker allows for that possibility. In situations of extremely severe wrongdoing, that there could be a deviation from that. In coming up with a one-to-one standard, the Supreme Court refers to surveys that were done which run the gamut for all misconduct— Isn't your basic point that there isn't a one? There isn't any— Correct, Judge. Yes. Our basic point is there's a zero. Okay. And so that seems to be your main argument on this. Agreed. Okay. So please— Sure. And we cite several cases for the proposition that when there are no compensatory damages, it's improper to award punitive damages. And of those, only one is a maritime case, the Neal case. And the Neal case, for citation of authority, is a state court—state law court case. Is that right? Yes, Judge. So can you direct us to a maritime case applying maritime law that says you cannot have punitive damages when there are no compensatory damages? I cannot, Your Honor. But this dovetails with the Exxon v. Baker standard. And if one-to-one is the general limit, barring extremely egregious misconduct, which I will point out in a moment we do not have here, then surely zero-to-one will not suffice under Exxon v. Baker itself. These other cases stand for the same proposition, in effect. I'd like to move on now to the factual problem, which applies both with respect to the award of punitive damages and the award of a finding in favor of the plaintiff on the wrongful detention claim. The undisputed facts here are that the work was completed, the vessel was at my client's shipyard. Without requesting to move the vessel, without advising the shipyard they were coming to move the vessel, the plaintiff came in on a holiday with a drone to capture any excitement that might happen, by surprise, with a tugboat he'd hired, and entered the private, narrow canal of the shipyard in an effort to remove its vessel by itself. Unprecedented, according to the manager of my client's shipyard, the person who owned the tugboat, hired by Kenai, testified he'd never had anybody do that either, and as Mr. Dardar, the manager of CP Marine, testified without contradiction and quite logically and reasonably, the constant practice of the shipyard is to re-deliver repaired vessels to the customers themselves. Your client had threatened $1,000 a day in one instance if he didn't move his vessel and $5,000 a day in another instance if he didn't get his vessel out, and your client testified, Mr. Dardar testified, that that's because he wanted the vessel gone. Isn't that correct? He wanted the vessel what? He wanted the vessel gone from his shipyard. Yes, Judge. Once a shipyard finishes working on a boat, it has no reason to want the boat there. It wants room at its dock. What's the complaint about the owner of the vessel, after being threatened with $1,000 a day and $5,000 a day, coming to get his vessel, when that's exactly what your client wanted him to do? Judge, I think it's important to bear in mind the sequence of these events and how it went  The plaintiff, Kenai, was not ready to take its vessel away from the shipyard until March 5th, which is Mardi Gras Day. That's undisputed fact. CP Marine doesn't know when it wants to do this. The plaintiff, Kenai, did not tell the shipyard, okay, we're ready. We want to remove our vessel. Isn't that the normal thing to happen? We want to take our vessel. Let's arrange this. That's what's supposed to happen. And as Mr. Dardar of CP Marine testified, without contradiction, and again, quite reasonably, that is a narrow private canal. It is lined with vessels, a dry dock. It's not a simple thing to get a tugboat and drag backwards a large 150-foot vessel like this Iron Dawn out of that canal. I know the position of your client is that he arrested and seized the vessel because it was a safety concern. Yes. But isn't there an abundance of evidence in this record to support Judge Brown's conclusion that this wasn't about safety? This was about a vindictive, malicious effort by your client because he was angry that the plaintiff was moving his vessel. Isn't there evidence in the record that says that? Judge, I have to disagree with that. No, there is no evidence. What about the evidence that your client said, if I had a shotgun, you'd be dead? Judge, that is not in the findings below. Well, it's not in the record. That was denied by Mr. Dardar from CP Marine. I know it was denied, but I mean, this is— Okay, well, it was not a finding of the court. The court did not choose to accept that as fact. That is not a part of the ruling below. Are we bound by what the court has put in its decision in reviewing what facts support her decision? Are we bound by what she's actually said in the opinion? I think you're entitled to consider other facts in the record, but I think— Including the statement made that if I had a shotgun, you'd be dead? Aren't we entitled to consider that? Judge, that was flatly denied by Joseph Dardar. And so it was a credibility call by Judge— It was a credibility call, and the district court judge was in the position to evaluate that testimony. This court respectfully is in a lesser position to do that, and Judge Brown did not see fit to include that in her opinion. She did not make a finding with respect to that. That is not a fact that Judge Brown decided to rely upon in reaching her determinations. There was absolutely ample safety concerns with this effort. It is undisputed, and the video evidence shows that the principal of Kenai turned on the engine, the only engine that worked at the time, a bow thruster engine, which privet the vessel around a narrow canal, left the engine room for four minutes, left the vessel in motion unattended in this tight, narrow canal. And the man indisputably had no—had never operated this vessel before. It was a huge safety risk. The shipyard is responsible— Is this for the district court to determine? I mean, this might be something where we would view the facts differently. That's fine, but that isn't our role as appellate judges. Well, Judge, the district court did not find to the contrary. The district court simply ignored this evidence. There's no finding to the contrary. There's no testimony to the contrary. It makes perfect common sense. It's proven in Exhibit 22, the video evidence. It is on video. Counsel, what about the invoice that was sent for $20,750? That is referenced in the district court's factual findings. It was sent the day after the incident, the unpleasantness on March 5th, only to be disclaimed later as I was kidding or I sent it almost as an irritant in this case. What was the purpose of that in the context of the district court's findings and awarding of punitive damages? Judge, the shipyard was understandably irritated that by surprise this customer, without even asking, tried to bring in a tugboat on a holiday and engage in this very dangerous effort to take the vessel away without notice. That forced him to use his own vessels and spend time. So in that spirit of irritation, he sent an invoice for the time and operation of the vessel needed to quell the situation. Later he said basically that and that he, in retrospect, shouldn't have sent the invoice. But Judge, we're talking about punitive damages here, and clearly there was a safety justification for stopping this effort. Tugboats are made to bump into other vessels. They do that all day. There is no evidence in the record. There's no testimony that this was a hard ramming in any sense. The owner of the tugboat that got bumped, Mr. Tom Denn, testified for the plaintiff but said, look, there was no damage to my vessel. I don't think that Mr. Dardar was trying to hurt anyone. I think he was trying to prevent the vessel from leaving and stop us from doing what we were doing. On the video, if Your Honors look at it, you can see there's an elderly gentleman standing on the deck of the tugboat that was bumped, another man as well. They're not even disturbed that the elderly gentleman testified at trial. He never said that there was any problem with this. Okay. Thank you, Judge. So I think, Your Honors, I think, Your Honors, that there is no basis in the record for a conclusion that this vessel was even wrongfully detained because there was no request to remove it. The only spirited evidence is that my client two days later on March 7th said, You're free to come get your vessel tomorrow. Thank you. You have saved time for rebuttal. Thank you. I will give some more sentences. Thank you very much. Okay. We'll now hear from Martin Bowman on behalf of Kenai. Good morning, Your Honors. Martin Bowman on behalf of Kenai Ironclad. Judge, as to your issue about the calculation of damages at the district court on the punitive side, the claim for wrongful detention is a claim for loss of use of the vessel during the days in which it was wrongfully detained. The court, I believe that our allegation actually was it was 11 days. The court made a very detailed examination of the record and determined that in light of all the testimony, that Kenai was excluded from the use of the vessel for five days. The question then becomes how do you value the exclusion in this situation? And, you know, at first I thought, you know, what is she doing? You know, she's talking about the contractual days, the day rate once the vessel got on. But it is the appropriate way to measure the damages for the loss of use in this particular case. So I think the claim is for loss of use. Was that something that was specifically pled, was the loss of use? Yes, it was. So my understanding of the law, the tort of conversion, is that you don't have to suffer any consequential damages. You took my bicycle. I want my bicycle back. You kept my bicycle for five days. I wasn't using my bicycle for the paper route, okay, so I didn't lose any money from the loss of my bicycle, but you had my bicycle for five days. Under the common law tort of conversion, doesn't that give rise to a claim for damages? Just for pure and simple loss of use of my item. Absolutely. All right. Isn't that what we have here? That is. This is a tort of maritime conversion, a tort of wrongful contention. Why didn't the district judge find that? That would be a lot easier if it was compensable damages. She's obviously well aware of what Judge DeGraw will just discuss, so why didn't she find that? Well, that I really can't tell you why she did or didn't do anything. I will tell you that I believe that she intended to make an award of punitive damages for wrongful arrest, given the nature of the bad faith here, that was reasonably related to the harm that was inflicted. I think that's what she did. I think she was giving a basis to the punitive damage award.  She could have said, I think that I'm going to deter this conduct in the future. I don't like people wrongfully arresting vessels, so I'm going to hit them with a $50,000 punitive award. But she didn't do that. She rationally tied it to the actual I don't have my bike for five days. That's what she tied it to. And the valuation was, in fact, this. Just to address this point, the situation here was that this was a start-up company and they were doing their own work. It's in the record that that's the reason that they selected this. They had some pad, and I know, Your Honor, did maritime work before you took the bench, so you'll understand that a lot of times when these vessels go to shipyards and there's delays, there are things that can be done to rectify the delays. They can work around the clock. They can hire extra welders. They can do all of this stuff to make up for that time. This was their first boat. They had to make it to Alaska or they were out of business. So they were working around the clock. And one of the things that came up to trial was that they were actually able to make up the time. So I'm not making a constitutional argument here, but what first came to mind when we were arguing this case at the trial court level was that this type of wrongful detention is, pardon the term of art, capable of repetition but evading review. If we allow people to wrongfully seize vessels but then say later, they made up for it, they're okay, then the ship owner, the yard owner, the vendor has no disincentive to ever not seize a vessel if it thinks that the other side can make up for it without getting tagged. And that's what I think is the problem that I have. Now, again, I'm using a term of art here where I shouldn't be, but if we say that there were no consequential damages, they made up those 11 days. They worked around the clock. They made up those 11 days. So his argument is so they didn't have any loss. They made it there on time. So you can't – I'm basically immune from the wrongful detention, and I don't think that's the way it works. And what I think Judge Brown was doing in somewhat of a reasonable way was determining how long the vessel was detained, five days, and assigning a value that she had before her as to the use of that vessel for those five days, and that equates to that. Now, getting back to if I could – did I answer your question, Judge? Getting back to if I could, the elements of the claim for wrongful detention are pretty straightforward. You don't have a lien and you detain the vessel. I mean, that's basically it. The claim is a maritime claim. We cited to the court the Apollon, and we got some flack for it because it's an old case, constantly reminding my kids that just because something is old, it's not relevant anymore, but that we did that to show that there's a long tradition in maritime law of recognizing the types of damages, compensatory damages, that can be awarded for wrongful arrest. Now, those compensatory damages include the attorney's fees. But, Mr. Bowman, the cases that allow attorney's fees as compensatory damages aren't the attorney's fees in those cases, cases where the attorney's fees were incurred in a collateral proceeding, not the proceeding in which the attorney's fees are awarded. In other words, the attorney's fees are incurred in connection with the suit to dissolve the lien, for instance. Oh, excellent point, Your Honor. And I was going to bring that up because, yeah, I do have an example of that. We see that from time to time. But in this case, the attorney's fees that she awarded were not incurred in connection with the collateral proceeding. They were incurred in connection with this proceeding, and therefore they're not compensatory damages, are they? Well, I do believe that they are, and here's why. Because this case procedurally, I think the Court's comment goes to more of a procedural issue. If there were no other allegations, if Kenai's only claim was for wrongful arrest, perhaps, or for wrongful detention, whatever you want to call it, if it was an arrest under Rule B or some other type of an attachment, and the only claim that Kenai had or desired to assert was a claim to dissolve that arrest or dissolve the warrant or get the vessel back if it's wrongful detention, it would have been a very singular action, and I think that's what the Court's getting to. It would have been a singular action, and in that case, there would have been a claim for compensatory damages for that singular action. But further, is the attorney's fee award inclusive of fees and costs incurred in connection with the unsuccessful demand, the breach of contract demand? That's why it was not decided by the Court on the day of judgment. That's why the magistrate got involved, and really those two comments are intertwined. The attorney excluded fees and costs incurred for the unsuccessful claims. Yes. The total amount of the fees and costs submitted to the magistrate, Judge, was $84,000. And that actually, Judge Inglehart, raises a point that I want to make, is that in this particular case from a procedural standpoint, Kenai would have had to have filed two different lawsuits. In this case, those lawsuits were consolidated. Now, in this, the issue that we've been batting around that Mr. Ruffey and I disagree on is whether or not this award of attorney's fees in this particular case was intended by the trial court to be compensatory. And he says, well, she didn't say it was compensatory, so therefore it must not be compensatory. Well, I disagree with that, and I'm going to tell you why. And this gets back to your point, Judge, is that this is a general maritime law claim. Right? Wrongful detention is a general maritime law claim. Not a statutory claim under the Jones Act, not a state law claim, not a diversity claim. It is a general maritime law claim. Now, at the general maritime law, attorney's fees are not normally awardable. You don't get attorney's fees for a GML case. Okay? Now, the reason that you get them in a wrongful detention case is because they are intertwined with the claim. This is a special kind of claim. This is a claim where at the general maritime law, it is recognized that a court sitting in admiralty can award an equitable compensatory award of attorney's fees. And that's where I think we're going. One of the cases in preparing for today, and this one's on me, we didn't cite to the court, is the Seisho Maru case by this court in 1984. And Seisho Maru, 744 Fed 2nd, 461, is a wrongful detention case addressed by the Fifth Circuit talking about these issues, the issue of compensatory versus cost. And it, of course, goes back to Vaughn, as they all do, and it says that this court has long required bad faith or malice since the Apollon was decided. And it cites Frontera Fruit and Noritake. And it says that if you prove bad faith in a wrongful detention case, you get compensatory damages in the form of attorney's fees and expenses. I'm as guilty of it as anyone. I use expenses and costs interchangeably, but they're not interchangeable. Expenses could include tugs to get a boat out of detention, could include expert surveys, whereas costs are different. Costs are governed by the statute under the federal court. Compensatory damages include attorney's fees and expenses under the general maritime law. But here's where I want to go. I don't get this often, so I'm going to quote Judge Rubin. Why not, right? He's Judge Rubin. But let me say this. In that case in Seychelles, Meru, Judge Rubin said, talking about the bad faith issue, on the same grounds we denied recovery for attorney's fees and incurred in obtaining the release of the vessel seized without differentiating between attorney's fees and other damages. This is what he says. He says the sum sought for fees was only $300. Now, meaning as of 1984, securing release of a vessel may occasion the payment of attorney's fees in amounts never dreamed of in 1937. It's time to reconsider whether wrongful seizure, even if provoked in good faith,  So what Judge Rubin is saying here is, of course we know, because it's been since the Apollon, that you get attorney's fees where there's been a bad faith detention. But it's time. Attorneys didn't make that much in 1937. Or maybe it was just less expensive to live. But now it costs a lot more. So now we need to revisit the issue. Now, when Judge Rubin says we should reconsider liability for attorney's fees by statute or otherwise, Judge Rubin's a pretty smart guy. He knew that he couldn't fashion a statute. What he's talking about here is expanding the claim under the General Maritime Law to address situations in which there's even good faith detention. Now, we don't need to go there. But the point here is that Judge Rubin in this court has taken the position that where there is bad faith, That was a concurring opinion? That was a concurring opinion. Now, I will tell you, in that case, they said no attorney's fees because there was no showing of bad faith. So that gets us back into this case. And Judge, not to be glib here, but presumably Mr. Dardar's safety concerns would have been allayed by having his shotgun on safe when he boarded the vessel as opposed to fire or unloaded or whatever. I mean, the whole concept is ludicrous. The record below is replete with credibility determinations and sufficient evidence to find that Mr. Dardar was acting in extreme bad faith when he detained us, when he sent the threatening letters. When, you know, the whole thing about, well, I was going to bill him for that, but then I changed my mind. Well, that was after he got our letter. And Mr. Ruffde was kind enough to put our release letter into the record, which shows that we were engaged to threaten him with a lawsuit unless he released the vessel. And that's when he did it, and that's the modicum of damages. So they did have to engage counsel. They were deprived of use, and it was bad faith. And for that reason, the attorney's fees were compensatory. Now, further to your point, Judge Englehart, because these claims were accumulated into a single action and because there was no way for the court to determine what attorney's fees were incurred relative to the maritime tort for conversion, the court referred that matter to the magistrate judge. The magistrate judge then went through our bills. It's never fun. But went through our bills and excised from that all of the things that had to do with the contract claim. Is that evident in the record? Well, he took a separate appeal on that issue. And there were actually three appeals taken in this case. And it is in the record. I'm not sure when the record was perfected, but it should be in the record. It is the court cut the fees down from $87,000 to $30-something thousand or $27,000 or whatever that number was. And that was done because Judge Brown asked the magistrate judge to go through the bills, figure out which ones were allocatable to the tort of maritime conversion. And that's what the court did. The court entered the order, and it was integrated into the order at the time when the judgment was signed. So if you go back and look at her findings of fact, she clearly states that I'm going to give them attorney's fees. But my point is slightly different. My point is that in a maritime tort for wrongful conversion, the attorney's fees are part of the claim. They are compensatory damage. They are part of the claim. It's not a statutory bolt-on. It's not a motion for costs under the Federal Rules of Civil Procedure. It is part of the tort. And that's what Judge Rubin and that's what this court has consistently held. Actually, in that Seisho Maru case, they go back and they talk about Vaughn. And Vaughn, you know, I mean there's some language to indicate that maybe Vaughn didn't even require bank fees. But this court has consistently said that in cases of wrongful conversion of a vessel or wrongful arrest, attorney's fees are compensatory. You're just entitled to them. And that's the tort. And so we can infer backwards, if you will, from the fact that in other general maritime law cases, you don't get attorney's fees at all because you don't get attorney's fees absent some statutory authority, that the remedy must be integrated into the claim. So I hate to try to backdoor into things, but that's where we are in this case. So the issue about, yeah, the claim for wrongful detention. I'm sorry, Judge Haynes, you had a question, I think. I don't know if it was answered, to Mr. Rufty. But, yeah, this is, you know, the issue of the determination by the court of bad faith. When we read his initial brief, we thought he was just re-arguing his case here. I know the court is well in tune with the standard, but the finding of bad faith and wrongful detention is subject to clearly erroneous standard. There is plenty of credibility calls in this case. The judge tried the case over multiple days, and Judge Brown listened to everything, and she just didn't believe his client was credible. So I realize that Mr. Rufty wants to come up here and talk about what his client said and did and his client's intent and all that, but that's just really not the way it works. So with regard, and I think the linchpin issue here, at least under the court's existing jurisprudence, although I might ask the court to take Judge Rubin's comment to heart, maybe expand this toward a little bit under the general maritime law and allow for even when there's not a full showing of bad faith, but as it stands right now, with the showing of bad faith, those attorney's fees are compensable. I know what it was, Judge Haynes, and just to address really this brief argument about the ratio of punitives. The Exxon case, I think it's Baker, says one-to-one, but it does not address, it does not apply when there's intentional acts or, quote-unquote, peculiar circumstances. And in this particular case, there were peculiar circumstances. There was a ramming, which seldom, if ever, occurs accidentally. My point was just one-to-one when there's a zero. Now, I understand you're arguing about attorney's fees, but if we end up disagreeing, then it's a zero in terms of— Well, and there you go. Then we get into this argument about, well, these were really compensatory even though she called them punitive. Well, so then we get also back into the argument about, and again, not to sound like a constitutional scholar, but capable of repetition but evading review because then we're into a situation where this can happen again, over and over again, without any remedy to the shipowner who's lost the use of his vessel for five days or whatever it turns out to be. With that, I'll rest, and thank you, Your Honor. Appreciate it. All right. Well, hear the rebuttal. Thank you, Your Honor. Okay. First, Mr. Bowman said that Kenai was able to catch up at the second shipyard. I just wanted to point out that in the lower court ruling, Judge Brown wrote at page 13, quote, Austin Adler, principal of Kenai, testified that plaintiff's timeline for getting to Alaska was still on track when the Iron Dawn left C.P. Marine's shipyard, close quote. So that's even after this kerfuffle over taking the vessel away. Your Honors, there could only have been bad faith, conducts adequate for punitive damages, if there was no legitimate safety concern in this surprise effort to remove the vessel. If safety dictated that it was appropriate for C.P. Marine to stop this effort, which is, and there's compelling undisputed testimony to that effect, that it was appropriate to stop this effort. There had been no request to remove the vessel as of that day. It's undisputed that Kenai did not even want to remove the vessel until that day and did not communicate this to C.P. Marine. C.P. Marine acted properly in the name of safety in thwarting this effort and then just two days later said, if you want us to give you your boat, we will. We can do it. We'll do it tomorrow, which was the 8th, three days after the 5th, which is the Mardi Gras day when this attempted self-help repossession, not notice or request, occurred. So first of all, at most, the detention could have been three days because C.P. Marine offered to return the vessel. Two days after this, for the third day, it requires arranging two tugboats. It requires some orchestration. Can't just snap your fingers. The boats are pulled out with two tugboats out of the narrow canal and given to the customers in the adjacent intercoastal waterway. That offer wasn't even accepted by C.P. Marine. It was content to wait three more days. It asked on the Sunday, the 11th or the 10th, to get his vessel back the next day. My client said, fine. That was the first request that the vessel be returned. My client said, fine. Arranged two tugboats. My client backed the vessel out with two tugboats and delivered it in the intercoastal waterway without incident on the 11th. So there's no five days. It's at most three days, and that ignores the fact that there was no request, and this was the first day that Kenai was even ready to remove the vessel, and it was patently dangerous. So, Your Honor, for those reasons, there was no detention, there was no bad faith, and there was no conduct adequate for punitive damages, which requires egregious misconduct. The only items mentioned are this bumping of boats. The boat that was bumped was the third party's tugboat brought in. It wasn't a Kenai vessel. No Kenai personnel were on it. The owner of that vessel said, there was no harm done to my boat. Nobody was hurt. I don't think he was trying to hurt anyone. He was just trying to stop the vessel. That's what tugboats are made to do. Do you know of this case that your opponent cited in the argument? The Saatchi Maru case? Your Honor, it was not cited in their brief, so I have not a chance to review it. I'd be happy to write a very short letter commenting it. But on that issue of whether— If you have something to say, then I give you permission. Okay, thank you. I won't— A couple days. Thank you very much. On that issue of attorneys' fees being compensatory or costs, the Budenich U.S. Supreme Court says that the general rule is that they're costs. In the Apollon case cited by Kenai 200 years ago, U.S. Supreme Court, in an arrest case, wrongful arrest case, said they can be either way. They can go either way. It depends on the circumstances of the case. And in that Apollon case, Supreme Court concluded that it was a compensatory in nature. They were also proven as damages in the conduct of that trial. It's clear from reading the Apollon opinion. In our case, all the telltale signals are that attorneys' fees here were costs. We know that from the judgment itself. First of all, there was no evidence presented of attorneys' fees at trial. The judgment refers to the— Hasn't your attorneys' fees appeal been dismissed? I'm sorry, judge, I didn't hear you. Has your attorneys' fees appeal been dismissed? The attorneys' fees appeal was voluntarily dismissed by us without any briefing. The judgment awards—makes an award, quote, in the amount of $17,000 in change, plus cost and reasonable attorneys' fees. Attorneys' fees are listed with the cost, not as part of the amount of the award, which is $17,000, representing only the punitive damages. It goes on to say, semicolon, pre-judgment interest on this amount. Amount, you already know, is the $17,000 in punitive damages, not attorneys' fees. To run from March 5, 2019. So the judgment itself indicates that these were—this was to be treated as costs. And this is not your normal, last point, wrongful arrest case. To Judge Gravel's point, normally in a wrongful arrest or detention case, the plaintiff has to sue to get his vote back. It incurs attorneys' fees for that purpose. Attorneys' fees are wrapped up in the substance of the action in that situation, as Judge Gravel noted. Here, we have a different situation. The vessel was voluntarily released as soon as it was requested. A few days later, lawsuit came months after the fact. I'm sure that we could discuss for a lot longer, but your time is up. We thank both sides for your arguments. The case is under submission, and we're concluded for today. We'll be back tomorrow at 9 a.m. Thank you.